# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CDR. WILMA J. ROBERTS,<br><br>　　　　　Plaintiff,<br><br>OWNERS INSURANCE CO.,<br><br>　　　　　Intervenor-Plaintiff,<br>v.<br><br>CHIPS EXPRESS, INC.,<br><br>　　　　　Defendant. | Case No. 12-CV-42-JPS<br><br><br><br>**ORDER** |

The plaintiff, Wilma Roberts, filed a motion for partial summary judgment on August 13, 2012. (Docket #29). She requests that the Court determine that the defendant, Chips Express ("Chips"), is liable under Servicemembers Civil Relief Act (SCRA), 50 U.S.C. App. § 537, for the unauthorized sale of the contents of Ms. Roberts' storage locker while Ms. Roberts was deployed. (Docket #30). Ms. Roberts' motion is now fully briefed, and the Court will issue its decision on the matter. (Docket #31, #37, #41).

**1.　BACKGROUND**

The relevant facts in this case are not in dispute.

Ms. Roberts is a member of the United States Navy. (PPFF ¶ 1). In June of 2008, Ms. Roberts was deployed overseas. (DPFF ¶ 7).

To accommodate Ms. Roberts' deployment, the Navy arranged for Ms. Roberts' personal property to be stored at a facility owned by Chips. (DPFF ¶ 7–8). In making this arrangement, the Navy submitted DD Form 1299 to

Chips; this form listed Ms. Roberts' residence as being located in Fort Collins, Colorado. (DPFF ¶¶ 7, 9). The Navy planned to cover the costs of storing Ms. Roberts' property during her deployment. (*See* DPFF ¶ 7).

Unfortunately, prior to Ms. Roberts' return from overseas, there was a profound record-keeping error by the Navy. On September 9, 2010, while Ms. Roberts was still deployed, the Navy sent DD Form 1164 to Chips, informing Chips that the Navy would no longer pay for Ms. Roberts' storage locker, and that Ms. Roberts, herself, would be responsible for future payments. (DPFF ¶¶ 10, 12).

Armed with this erroneous information, Chips began to send invoices to Ms. Roberts, seeking payment for the rental of the storage space. (DPFF ¶ 13). However, because Ms. Roberts' address was listed as being in Fort Collins, Colorado, on both the 1164 and 1299 forms (as opposed to her address where she was deployed), Ms. Roberts never received those invoices. (DPFF ¶ 13). Each invoice was returned to Chips as "undeliverable as addressed." (DPFF ¶ 13). After not receiving any payment on the invoices it had sent, Chips sent a final notice of invoice to the same address in Fort Collins, Colorado—Ms. Roberts, of course, did not receive that notice, which was returned as "undeliverable as addressed." (DPFF ¶ 13). Chips made one final attempt to contact Ms. Roberts, this time through email, but received notice that the email address was not available due to its being "over quota." (DPFF ¶ 15).

Having failed to receive a reply or payment,[1] Chips contacted the Navy to request to dispose of Ms. Roberts' property. (DPFF ¶ 14). Chips alleges that its representative was informed by a Navy employee that the Navy was no longer responsible for Ms. Roberts' property, and therefore Chips could proceed to dispose of it like a civilian lot. (DPFF ¶ 16).

After contacting the Navy, Chips elected to proceed with the sale of the contents of Ms. Roberts' storage locker. On April 15, 2011, Chips published a notice asserting a warehouseman's lien on the locker's contents. (Roberts Br. in Supp. Ex. E). Then, pursuant to that lien, on July 2, 2011, Chips auctioned off the locker's contents. (Roberts Br. in Supp. Ex. A, ¶¶ 7–8; Ex. B, ¶¶ 1–2; Ex. F). Chips did not obtain a court order authorizing that sale. (Roberts Br. in Supp. Ex. B, ¶ 2).

The cruel irony is that—after this seemingly-lengthy period of time passed, during which invoices were sent, the Navy was contacted, and arrangements of sale were made—Ms. Roberts returned to the United States mere days after the auction. (Roberts Br. in Supp. Ex. A, ¶ 7). On or about July 9, 2011, only one week after the auction, Ms. Roberts returned to the United States and learned that her property had been sold. (Roberts Br. in Supp. Ex. A, ¶ 7).

Ms. Roberts then brought suit against Chips in this Court, alleging that Chips should be held liable for damages under the SCRA, 50 U.S.C. App.

---

[1] While it is certainly true that Chips did not receive a reply or payment, the Court wonders whether such reply or payment could rationally have been expected by Chips—every item they had attempted to send to Ms. Roberts had been returned as undeliverable. By Chips' own admission that all items had been returned as undeliverable (DPFF ¶¶ 13, 15), the Court can easily infer that Chips knew that Ms. Roberts' had not received notification of the relevant invoices or final notices.

§ 537. She filed a motion for summary judgment on August 13, 2012, seeking a determination that Chips is liable under the SCRA for its actions; according to Ms. Roberts, such determination would leave only the issue of damages for trial by jury. (Roberts Br. in Supp.)

**2.    SUMMARY JUDGMENT STANDARD**

The Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of the summary judgment motion is to determine "whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**3.    DISCUSSION**

The relevant statutory provision in this case, 50 U.S.C. App. § 537, reads as follows:

> (a)    Liens
>
> > (1) Limitation on foreclosure or enforcement. A person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose or enforce any lien on such property or effects without a court order granted before foreclosure or enforcement.
>
> > (2) Lien defined. For the purposes of paragraph (1), the term "lien" includes a lien for storage, repair, or cleaning of the property or effects of a servicemember or a lien on such property or effects for any other reason.

The only issue that the Court must address in deciding Ms. Roberts' motion for summary judgment is a legal one directly related to that statute: whether § 537 of the SCRA, under which Ms. Roberts argues that Chips should be held liable, holds individuals holding liens over the goods of servicemembers strictly liable for their failure to obtain a Court order prior to enforcing their lien. If the Court determines that the statute imposes strict liability, then the issue of Chips' liability is settled and the Court must grant Ms. Roberts' motion, because there can be no dispute that Chips failed to obtain a court order prior to enforcing its lien, as required by § 537. If, on the other hand, the statute does not impose strict liability, then Chips' liability is a factual question of whether Chips acted negligently in selling Ms. Roberts' property—in which case the Court must deny Ms. Roberts' motion because that factual question must be presented to the jury.

Thus, in deciding this motion, the Court must engage in the singular legal analysis of determining whether § 537 imposes strict liability. In performing that analysis, the Court will first look to the text of the statute, then to the sparse case law on the topic, and finally to the policy implications surrounding a determination that § 537 imposes (or does not impose) strict liability upon lienholders.

### 3.1 Statutory Interpretation

The Court will begin by interpreting the text of the statute. It will first determine whether the text of the statute is clear; if it is, then it should stop there unless such reading leads to an absurd result. *Krzalic v. Republic Title Co.*, 314 F.3d 875, 879–80 (citing *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440 (1989); *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 527 (1989); *AM Int'l, Inc. v. Graphic Management Assoc's Inc.*, 44 F.3d 572, 577 (7th Cir. 1995)).

The clear language of the statute does not include any *mens rea* requirement, and therefore the Court determines that it imposes strict liability on lienholders such as Chips. 50 U.S.C. § 537(a)(1) clearly states that any person holding a lien over a servicemember's property "may not…foreclose or enforce [that] lien…without court order granted before foreclosure or enforcement," while the servicemember is on active duty. The statute does not say that its limitation applies only when the lienholder *knows* that the servicemember is on active duty. Rather, on the plain terms of the statute, all that is required for there to be a violation is: (1) a servicemember on active duty; (2) a lien over that servicemember's property; (3) foreclosure or enforcement of that lien; and (4) absence of a court order. Simply put, on the plain terms of the statute's language, it does not matter whether the lienholder's foreclosure was entirely innocent and negligence-free—where the four above-noted requirements are satisfied, there is liability regardless of *mens rea*: strict liability.

Moreover, the Court is unable to conclude that a finding of strict liability is an absurd result, and therefore it will adopt the plain reading of the statute and impose strict liability on Chips. The SCRA was enacted to protect the rights of servicemembers, and § 537(a)(1)'s imposition of strict liability will do just that. *See Conroy v. Aniskoff*, 507 U.S. 511, 517–18 (1993) ("Congress made a deliberate policy judgment placing a higher value on firmly protecting the service member's" rights than on other typically-applicable collection rights). Surely, it will require that lienholders such as Chips jump through the extra hoop of obtaining a court order before foreclosing on a servicemember's property. But that is not an absurd result. Rather, in reality, it could have prevented the very problem now presented

to the Court, by either delaying the foreclosure process or ferreting out the fact that Ms. Roberts was, in fact, still on active duty when Chips foreclosed on her property. Given the difficult circumstances that arise in many instances involving contacting servicemembers, strict liability will force companies like Chips to take the extra step of obtaining a Court order when foreclosing on the property of a potentially-active servicemember; in fact, that result could very well have been intended by the law's drafters. Surely, if Chips had feared civil liability for foreclosing on Ms. Roberts' property, they may very well have made more diligent attempts to establish contact with her.

Chips argues that strict liability is disfavored as a matter of law, and therefore the Court should shy away from finding it in this case. (*See* Chips Resp. 9–11 (citing *Jansen v. Packing Corp. of America*, 123 F.3d 490 (7th Cir. 1997)). Citing dicta from Judge Coffey's dissent and concurrence in *Jansen*, Chips argues that strict liability is typically reserved for situations involving "'abnormally dangerous' or 'ultra hazardous' activity that results in harm." (Chips Resp. 10 (quoting *Jansen*, 123 F.3d at 521 (itself citing *Opal v. Material Service Corp.*, 9 Ill. App. 2d 433, 133 N.E.2d 733 (1956)))). Even if one were to assume that general statement were binding law (which to be sure it is not), the Court would still conclude that strict liability is appropriate here. In many ways, the storage of servicemember property is abnormally dangerous—given the long deployment times and frequent moves experienced by many servicemembers, it is logically more dangerous for individuals to store the possessions of servicemembers when compared to the possessions of the general public. This case itself provides a perfect case-in-point: due to the Navy's bookkeeping errors, Ms. Roberts' deployment,

and her multiple addresses, Chips failed to locate her and sold her property in error through no fault of her own. For that reason, even knowing of the general disfavor exhibited toward strict liability, the Court determines that 50 U.S.C. App. § 537(a)(1) imposes strict liability upon lienholders.

Having determined that the plain language is clear and that such reading does not lead to an absurd result, the Court finds that 50 U.S.C. App. § 537(a)(1) imposes strict liability upon Chips.

### 3.2 Case Law

The Court's determination is further buttressed by the fact that the U.S. District Court for the Eastern District of Virginia held in *Gordon v. Pete's Auto Service of Denbigh, Inc.*, that 50 U.S.C. App. § 537(a)(1) imposes strict liability. *Gordon v. Pete's Auto Service of Denbigh, Inc.*, 837 F. Supp. 2d 581, 585 (E.D. Va. 2011) ("Section 307(a) [50 U.S.C. App. § 537(a)(1)] is a strict liability statute; it does not require proof of any *mens rea* to establish civil liability.") (citing *United States v. B.C. Enters., Inc.*, 667 F. Supp. 2d 650, 662–64 (E.D. Va. 2009)). While this is a question of first impression in the Seventh Circuit, and has been confronted only one other time throughout the nation—by the *Gordon* court—this Court takes confidence in the fact that it is not alone in reaching the strict liability conclusion.

In addition to *Gordon*, the Supreme Court has voiced its favor for interpreting the SCRA to have been intended as a very servicemember-friendly statute. *See Conroy*, 507 U.S. at 517–18. In *Conroy*, the court determined that a servicemember's rights trumped the state of Maine's rights to collect on a tax deficiency. *Id.* If the Supreme Court views the SCRA to value a servicemember's rights over that of a state, this Court is confident in

Page 8 of 12

Case 2:12-cv-00042-JPS   Filed 10/12/12   Page 8 of 12   Document 51

believing that it should hold a servicemember's rights over the rights of a private individual to quickly foreclose upon a servicemember's property.

In sum, between the Court's interpretation of 50 U.S.C. App. § 537(a)(1) and the discussed law, the Court is justified in concluding that the statute imposes strict liability on lienholders to obtain a court order before foreclosing on an active servicemember's property.

### 3.3 Application of Strict Liability to Chips' Actions

As stated above, the Court views 50 U.S.C. App. § 537(a)(1) as applying when an active servicemember's property is foreclosed upon by a lienholder without a court order approving such foreclosure.

That clearly applies to the situation in this case. Here, Ms. Roberts was on active duty overseas. Chips held a lien over her personal property. After several months without contact or payment, Chips foreclosed on that lien by auctioning off Ms. Roberts' property. Chips did so without first obtaining a court order.

Every requirement of 50 U.S.C. App. § 537(a)(1) is satisfied—as the court has already determined that the statute has no *mens rea* requirement, imposing strict liability on lienholder—and, therefore, the Court is obliged to determine that Chips is liable to Ms. Roberts under the statute. As such, the Court will grant Ms. Roberts' motion for summary judgment on the issue. (Docket #29).

### 4. CONCLUSION

Having determined that it is appropriate to find Chips liable under 50 U.S.C. App. § 537(a)(1), that issue will not need to be tried to a jury.

The matter of liability is not entirely settled, though. Rather, at trial, Chips may still argue and try to prove that Ms. Roberts was contributorily

or comparatively negligent in Chips' sale of her property, as Wisconsin law allows for defendants in strict liability cases to attempt to diminish their liability by arguing contributory and comparative negligence in cases such as product liability and safe-place statutes. *See, e.g.*, *Morden v. Continental AG*, 2000 WI 51 ¶¶ 42–45, 235 Wis. 2d 325, 611 N.W.2d 659; *D.L. by Friedrichs v. Huebner*, 110 Wis. 2d 581, 645–46, 329 N.W.2d 890, 920–21 (1983); *Dippel v. Sciano*, 37 Wis. 2d 443, 461–62, 155 N.W.2d 55, 64–65 (1967); *Presser v. Siesel Construction Co.*, 19 Wis. 2d 54, 119 N.W.2d 405 (1963); *Besnys v. Herman Zohrlaut L. Co.*, 157 Wis. 203, 210–12, 147 N.W. 37 (1914); Erik J. Pless, *Wisconsin's Comparative Negligence Statute: Applying It to Liability Cases Brought Under a Strict Liability Theory*, WIS. LAWYER (August, 1998). Of course, the SCRA being a federal statute, Wisconsin's courts have not determined whether defendants governed by its provisions should be allowed to argue contributory or comparative negligence; nonetheless, the Court believes that Chips should be allowed to raise those arguments in this matter. As protective as the Court should be of servicemembers' rights, it does not wish to blindly protect those rights at the expense of harming innocent lienholders. Here, Chips certainly could have obtained a court order and also could have made more devoted attempts to reach Ms. Roberts. However, if there is evidence that Ms. Roberts, herself, had some negligent hand in the outcome of this situation, then the Court believes that loss should lie with the appropriate party. That is, if Ms. Roberts had some duty to inform the Navy or Chips of her most-current forwarding address, and failed to adequately satisfy that duty, then she may well be held contributorily or comparatively negligent.

Furthermore, as the parties agree, the issue of damages must also be presented to the jury. The issue of damages encompasses Ms. Roberts' alleged failure to mitigate, and therefore that issue of mitigation should also be presented to the jury, as requested by Chips. (Chips Resp. 17).

Nonetheless, at this time, the Court will grant the plaintiff's motion for partial summary judgment (Docket #29), and leave the other remaining issues to be addressed at trial.

The Court will also address three additional minor matters raised by the parties. First, it will grant the intervenor-plaintiff's motion to correct its name from Auto-Owners Insurance Company to Owners Insurance Company. (Docket #34). Second, it will deny as moot Ms. Roberts' motion to strike the affidavit of Thomas T. Calkins, because the Court did not rely on that affidavit in reaching its findings of fact. (Docket #40). Third, on October 3, 2012, Chips filed a motion for leave to file additional materials relating to the Navy's policy on the storage of servicemember property under the SCRA. (Docket #43). The Court will deny that motion, because the offered material is irrelevant to the dispute here—regardless of the Navy's policy relating to the SCRA, the Court has determined that 50 U.S.C. App. § 537 imposes strict liability upon lienholders to obtain a court order prior to foreclosing upon that lien. Thus, the Navy's policy is wholly immaterial, as Chips' failure to obtain a court order—and that fact standing alone—exposes Chips to liability.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for partial summary judgment (Docket #29) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the intervenor-plaintiff's motion to amend its name to Owners Insurance Company (Docket #34) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to strike the affidavit of Thomas T. Calkins (Docket #40) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that the defendant's motion for leave to file supplemental material (Docket #43) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 12th day of October, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge